IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OG INTERNATIONAL, LTD. ET AL.,<br><br>    Plaintiffs,<br><br>    v.<br><br>UBISOFT ENTERTAINMENT ET AL.,<br><br>    Defendants.<br>_____/ | No. C 11-04980 CRB<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND** |

Now pending is a motion to dismiss certain claims based on the assertion of Noerr-Pennington immunity.  The Court GRANTS the motion to dismiss with leave to amend.

### I.     FACTUAL BACKGROUND

Defendants Ubisoft Entertainment S.A. and Ubisoft, Inc. (collectively "Ubisoft") developed and sold the video game franchise *Just Dance*.  Am. Compl. (dkt. 66) ¶ 18. Plaintiffs OG International Ltd. and O-Games, Inc. (collectively "OGI") developed a videogame called *Get Up and Dance*.  Id. ¶ 13.  Ubisoft sent letters to OGI's business partners, GameStop and Crave Games ("Crave"), threatening a lawsuit based upon claims of copyright infringement, unfair competition, and trade dress infringement, if the two companies distributed OGI's game in its allegedly infringing form.  Hart Decl. (dkt. 73).  In response to these letters, Crave and GameStop suspended distribution of *Get Up and Dance*. Am. Compl. ¶¶ 35, 64.  OGI brought suit seeking a declaratory judgment that its game did not violate Ubisoft's copyright or trade dress rights and that its actions did not constitute

unfair competition. Compl. (dkt. 1) ¶¶ 31, 36, 41, 48. Ubisoft then filed counterclaims alleging copyright infringement, trade dress infringement, and unfair competition. Answer (dkt. 6) at ¶¶ 29, 36, 39. OGI then amended its Complaint to add the following claims related to Ubisoft's alleged communications with OGI's business partners: (i) intentional interference with contractual relations; (ii) trade libel; and (iii) unfair competition. Am. Compl. ¶¶ 59-65. Ubisoft now moves to dismiss those last three claims, arguing that it is protected by Noerr-Pennington immunity. Mot. (dkt. 72) at 3.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in a complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). "Detailed factual allegations" are not required, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In determining facial plausibility, whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

A complaint should not be dismissed without leave to amend unless it is clear that the claims could not be saved by amendment. Swartz v. KPMG LLP, 476 F.3d 756, 760 (9th Cir. 2007).

## III. DISCUSSION

Normally, courts look only to the pleadings when considering a motion to dismiss. Fed. R. Civ. P. 12(b)(7). But, "an exhibit to a pleading is part thereof for all purposes." Fed. R. Civ. P. 10(c). And, "[a] district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party

2

<div style="float:left">**United States District Court**
For the Northern District of California</div>

1  questions, but which are not physically attached to the [plaintiff's] pleading.'" Moody v.
2  Liberty Life Assur. Co, No. 07-1017, 2007 U.S. Dist LEXIS 32837, at *9 (N.D. Cal. Apr. 19,
3  2007) (quoting Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other
4  grounds, Galbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002)).
5       Here, OGI's Complaint describes a letter sent to Crave on September 19, 2011, and a
6  letter sent to GameStop in October 2011. In its motion to dismiss, Ubisoft submitted the
7  referenced letters. Hart. Decl. The Court will consider these letters in deciding this motion
8  to dismiss.

     **A.   Ubisoft's Letters to GameStop and Crave Are Eligible for Noerr-Pennington Immunity**

     The Noerr-Pennington doctrine protects "the right of the people . . . to petition the Government for a redress of grievances" by providing immunity from liability for petitioning conduct. Sosa v. DirecTV, Inc., 437 F.3d 923, 929 (9th Cir. 2006) (quoting U.S. Const. Amend. I). "The right of access to the courts is . . . one aspect of the right of petition." Sosa, 437 F.3d at 929 (citing Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972)). While the Noerr-Pennington doctrine was developed in response to antitrust claims, courts have expanded it to other contexts. Id. at 930. The Ninth Circuit has held that "[c]onduct incidental to a lawsuit, including a pre-suit demand letter, falls within the protection of the Noerr-Pennington doctrine." Theme Promotions, Inc. v. News Am. Mktg. FSI, 546 F.3d 991, 1007 (9th Cir. 2008) (citing Sosa, 437 F.3d at 936-38).

     Here, OGI argues that its claims are not limited to Ubisoft's letters and that Ubisoft's letters are not eligible for Noerr-Pennington immunity. Opp'n at 5. First, OGI argues that its reference to Ubisoft's "communications" refers not only to demand letters, but to other unnamed communications that might not fall under Noerr-Pennington immunity. Opp'n at 5. Second, OGI argues that Sosa's reasoning does not extend to letters to non-parties and that because Ubisoft has not filed claims against Crave or GameStop, the letters were not incidental to the prosecution of a lawsuit. Opp'n at 6. OGI's arguments are unavailing.

     First, the only sufficiently pled communications are Ubisoft's letters to Crave and GameStop. In describing the facts supporting its Complaint, OGI alleged that on September

3

29, 2011, Ubisoft sent a letter to Crave.  Am. Compl. ¶ 24.  OGI further alleged that Ubisoft sent a letter to GameStop in October 2011.[1]  Id. ¶ 25.  Finally, OGI's complaint alleges that "[a]pproximately thirty days before the long-scheduled release of the . . . video game," Ubisoft sent "a communication or communications to Crave falsely alleging that Plaintiffs' *Get Up and Dance* video game infringed Ubisoft's . . . rights."  Id. ¶ 62.  Thirty days before the scheduled release is the same time frame as the letters, and regardless of how the language could theoretically be interpreted in the abstract, in the context of the complaint OGI has not adequately alleged or represented that Ubisoft sent any communications besides the letters.

Second, the referenced communications do not fall outside of Noerr-Pennington immunity.  The letter from Ubisoft to Crave threatens litigation, stating "[i]f you refuse . . ., Ubisoft will file suit for copyright infringement, unfair competition, and trade dress infringement"  Hart Decl. (dkt 73-1) at 5.  Similarly, the letter from Ubisoft to GameStop includes the letter sent to Crave and states that Ubisoft is taking action against "the makers and distributors"of *Get Up and Dance*.  Hart Decl. Ex. B at 1 (emphasis added).  Thus, both of these letters threaten litigation and are eligible for Noerr-Pennington immunity.

Further, the rationale underlying the extension of Noerr-Pennington immunity to cover presuit demand letters does not require that a lawsuit actually be filed.  Sosa, 337 F.3d at 935-36 (noting that settling unfounded claims is often less burdensome than proceeding to litigation).  Thus, the fact that Crave and GameStop were never sued and are non-parties to the present suit does not preclude application of Noerr-Pennington immunity.

### B. The Letters Do Not Fall into the Sham Exception

Though Sosa found that Noerr-Pennington immunity could apply to presuit demand letters, the court also noted that the immunity "is not a shield for petitioning conduct that, although 'ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business

---

[1] The Amended complaint refers to "October 1022."  Am. Compl. ¶ 25.  For purposes of this analysis, the Court assumes that OGI meant October 2011.

4

relationships of a competitor.'" Id. at 938 (quoting E. R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 144 (1961)). To prove "that a petition to the court is a sham, the party seeking to impose liability must establish both that the legal claim is objectively baseless and that the suit was brought for an anticompetitive purpose." Id.

A lawsuit is objectively baseless if "no reasonable litigant could reasonably expect success on the merits." Theme Promotions, Inc., 546 F.3d at 1007 (citing Liberty Lake Invs., Inc. v. Magnuson, 12 F.3d 155, 157 (9th Cir. 1993)). Here, OGI's complaint asserts that Ubisoft's letters to Crave and GameStop contained "false" claims. Am. Compl. at ¶¶ 24, 25, 33, 35. While the Court construes the facts in the manner most favorable to OGI, "false" and "objectively baseless" are two different concepts.

Since the Court only considers a party's subjective motivation if the lawsuit is found to be objectively baseless, the Court declines to address that element. Accordingly, OGI's intentional interference with contractual relations, trade libel, and unfair competition claims are barred by Noerr-Pennington immunity.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss with leave to amend.

**IT IS SO ORDERED.**

Dated: October 9, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE